IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HARDAGE HOTELS II, L.P.,[1] | ) | Case No. 11-10518 (BLS) |
| | ) | |
| Debtor. | ) | Related Docket Nos. 13, 23 and 39 |

**DEBTOR'S REPLY TO CWCAPITAL ASSET MANAGEMENT LLC'S OPPOSITION TO DEBTOR'S MOTION (A) FOR AUTHORIZATION TO (I) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; AND (II) PROVIDE ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (B) TO SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AND SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION**

Hardage Hotels II, L.P., the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), by its undersigned counsel, submits this reply (the "Reply") to the *Opposition to Debtor's Motion (A) for Authorization to (I) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; and (II) Provide Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and (B) to Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 23] and the *Supplemental Brief in Support of Opposition to Debtor's Motion (A) for Authorization to (I) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; and (II) Provide Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and (B) to Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 39] (collectively, the "Opposition") filed by CWCapital Asset Management LLC ("CWCapital") to the *Debtor's Motion (A) for Authorization to (I) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; and (II) Provide Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and (B) to Schedule a Final Hearing Pursuant to*

---

[1] The last four digits of the Debtor's federal tax identification number is (3250). The Debtor's address is 1380 Piccard Drive, Rockville, MD 20850.

*Bankruptcy Rule 4001* [Docket No. 13] (the "Motion"). In support of this Reply, the Debtor respectfully represents and states as follows:

### Preliminary Statement

1. The revenues from the Debtor's hotel ("the Hotel") were not absolutely assigned to CWCapital under Maryland law, and are property of the Debtor's estate.

2. CWCapital's interest in the Hotel revenues, if any, is adequately protected against any diminution in the value of its interest from the Petition Date. The cash generated by the Hotel is for guest rooms and restaurant charges. CWCapital cannot prove that the Hotel property is subject to any leases or that any of the Hotel revenues are rents under leases. CWCapital is not entitled to a dollar-for-dollar protection of its interest, if any, in the Debtor's Hotel revenues. It is entitled to protection only against any diminution in the value of the Hotel property and the cash-on-hand at the Petition Date.

3. To the extent, if any, that CWCapital's interest in the Hotel revenues is not adequately protected by the payments and replacement liens proposed by the Motion, the Court should limit the extent of CWCapital's postpetition interest in the hotel revenues and authorize the Debtor's use of the hotel revenues as proposed based on the equities of the case. The goals of preserving jobs and enhancing the going concern value of the Hotel and the Debtor's rehabilitation efforts outweigh the Court's need to protect the purported secured lender in this case.

### A. The Hotel Revenues Are Property of the Debtor's Estate.

4. The revenues from the Debtor's Hotel were not absolutely assigned to CWCapital under Maryland law, and are property of the Debtor's estate.

5. Congress has left the determination of property rights in the rents and profits of real estate and other assets of a bankrupt's estate to state law. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). "Assignments of rents are interests in real property and, as such, are created and defined in accordance with the situs of the real property." *In re Jason Realty, L.P.*, 59 F.3d 423, 427 (3d Cir. 1995) (citing *Butner v. U.S.*, 440 U.S. at 55).

6. The Hotel is located in Rockville, Maryland. Even if the Hotel revenues are "rents," as CWCapital argues, Maryland law would apply to the determination of whether the Assignment of Leases and Rents (the "Assignment") and the Deed of Trust, Assignment of Rents and Security Agreement, each dated January 23, 1996 (the "Deed of Trust"), absolutely assigned and transferred title to the revenues to CWCapital.[2]

7. Under Maryland law it is clear that the assignment was made as security for the loan, and is not an absolute conveyance. *In re Bethesda Air Rights Limited Partnership*, 117 B.R. 202, 206 (Bankr. D. Md. 1990). The bankruptcy courts and the state courts in Maryland have rigorously considered this question under Maryland law, and have unequivocally concluded that an assignment such as that made by the Debtor under the Assignment and the Deed of Trust creates a security interest only.

8. The bankruptcy court in *In re Bethesda Air Rights* reached this holding after an extensive analysis of Maryland law and of loan documents substantially the same as those here. Those documents stated among other things: (1) that the assignment was absolute,

---

[2] The cases cited by CWCapital in support of its argument that the Debtor by the Assignment and Deed of Trust made an absolute assignment of its Hotel revenues are not pertinent because none of them construe Maryland state law, which under *Butner* is determinative. *In re Jason Realty, L.P.*, 59 F.3d 423, 427 (3d Cir. 1995) (New Jersey law); *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34 (3d Cir. 1993) (Pennsylvania law); *In re Carretta*, 220 B.R. 203 (D.N.J. 1998) (New Jersey law); *MacArthur Executive Associates v. State Farm Insurance Co.*, 190 B.R. 189 (D.N.J. 1995) (New Jersey law).

and title to the leases was conveyed to the lender along with a grant to the lender of the immediate and continuing right to collect and receive all rents, but also stated (2) that the assignment was to further secure payment of the loan, (3) that the borrower had a license to collect the rents prior to default, and (4) that upon payment in full of the indebtedness, the assignment was void and of no further force or effect. *In re Bethesda Air Rights*, 117 B.R. at 206-08. The loan documents further provided (5) that the lender had no obligations when collecting the rents to manage, operate or maintain the property. *Id.* at 207.

9. The CWCapital Assignment and Deed of Trust contain the same provisions, *see e.g.*, (1) "Assignor...absolutely and unconditionally assigns" (Assignment, Preamble, p. 1 and § 1, p. 4; (2) to "secure the payment of an indebtedness" under the Note (Deed of Trust, Granting Clauses (pp. 1-4) [grant of assignment of leases and revenues in subparagraph (d) on p. 2 and other grants are to secure repayment as set forth in the 2nd paragraph on p. 1]); (3) Debtor has license to collect rents prior to default (Assignment, § 1, p. 4); (4) assignment is terminated and null and void upon payment in full of indebtedness (Deed of Trust, § 64; Assignment, § 15), and (5) CW Capital has no "obligation or liability for the control, care, management or repair" of the property (Assignment, § 3).

10. The bankruptcy court in *Bethesda Air Rights*, citing cases from the Maryland Supreme Court and the Maryland Real Property Code, concluded that under Maryland law the assignment of rents was for security only. The court's quote from the Maryland Real Property Code is especially compelling: "Every deed which by any other writing appears to have been intended only as security for payment of an indebtedness . . . though expressed as an absolute grant, is considered a mortgage . . . ." *Id.* at 206 (quoting Md. Real Prop. Code Ann.

§ 7-101(a), and citing *Lednum v. Barnes*, 103 A.2d 865, 870 (1954) and *Thomas v. Klemm*, 43 A.2d 193, 195 (1945)). Further, the term "[d]eed includes a lease and an assignment '... pertaining to land or property or any interest therein or appurtenant thereto.'" *Id.* (quoting Md. Real Prop. Code Ann. § 1-101(c)).[3]

11. The court in *Bethesda Air Rights* concluded that, because the rents "are treated as security under state law, rents collected post-petition are cash collateral which Debtor may use if it provides adequate protection to Lender." *Id.* at 209.

12. Courts construing similar assignments of rents under Maryland law have consistently held that such assignments are not absolute, are for security only, and thus that the rents are cash collateral. *In re Fairview-Takoma Limited Partnership*, 206 B.R. 792, 796-97 (Bankr. D. Md. 1997) (applying Maryland law post-1994 amendments to Bankruptcy Code § 552 and following *In re Bethesda Air Rights*); *In re 1350 Piccard Limited Partnership*, 148 B.R. 83, 84 (Bankr. D.C. 1992) (applying Maryland law and following *In re Bethesda Air Rights*).

13. The Hotel rents or revenues were not absolutely conveyed or assigned to CWCapital under Maryland law, and are and remain property of the Debtor's estate.

### B. CWCapital's Interest in the Hotel Revenues, if Any, Is Adequately Protected.

14. CWCapital's interest in the Hotel revenues, if any, is adequately protected.

15. CWCapital must prove that it has an interest in those revenues, and the validity, priority or extent of that interest. 11 U.S.C. § 363(p)(2).

16. The Hotel is not subject to any leases or rental agreements.

---

[3] These Maryland statutes remain in full force and effect today.

17. The Hotel revenues are not "rents" of the Hotel property, but are "fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties," paid by the guests and patrons of the Hotel. 11 U.S.C. § 552(b)(2).

18. The bankruptcy court in *In re West Chestnut Realty of Haverford, Inc.* held, with the "clear majority" of cases, "that revenues from hotel/motel room occupancy are personal property, accounts receivable, and not 'rents.'" *In re West Chestnut Realty of Haverford, Inc.*, 166 B.R. 53, 55-56 (Bankr. E.D. Pa. 1993), *aff'd*, 173 B.R. 322, 324 (E.D. Pa.1994); *In re Shore Haven Motor Inn, Inc.*, 124 B.R. 617, 618 (Bankr. S.D. Fla. 1991); *In re Punta Gorda Associates*, 137 B.R. 535, 537 (Bankr. M.D. Fla. 1992); *In re Ashoka Enterprises, Inc.*, 125 B.R. 845, 846 (Bankr. S.D. Fla. 1990); *In re Sacramento Mansion, Ltd.*, 117 B.R. 592, 606 (Bankr. D. Colo. 1990); *In re Blue Ridge Motel Associates*, 106 B.R. 81, 82 n.1 (Bankr. W.D. Pa. 1989); *In re Greater Atlantic and Pacific Inv. Group, Inc.*, 88 B.R. 356, 359 (Bankr. N.D. Okla. 1988); *In re Kearney Hotel Partners*, 92 B.R. 95, 99 (S.D.N.Y. 1988); *see also In re Brandywine River Hotel, Inc.*, 177 B.R. 10 (Bankr. E.D. Pa. 1995) (referring to its opinion in *West Chestnut Realty of Haverford*, the court noted that the 1994 amendments to § 552(b) did not appear to eliminate the state law distinction between "rents" and "hotel revenues").

19. The Debtor is a Delaware limited partnership, and a financing statement must be filed to perfect a security interest in accounts under the Delaware Uniform Commercial Code. 6 Del. Code Ann. § 9-310.

20. CWCapital has the burden of proving the extent of any perfected interest that it asserts in the Hotel revenues.

21. But in no event can those revenues be characterized as "rents," because the Debtor has not leased any of the Hotel property, and all the Hotel revenues are from payments received from guests and patrons.

22. CWCapital, simply put, has no present interest in a stream of rental payments that tenants are required to pay under existing leases, and since no such interest exists, CWCapital is not entitled to adequate protection for its use.

23. CWCapital puts great stock in cases from the courts of the Sixth Circuit that it argues hold that where a specific assignment of rents of existing leases has been given as security, a "diversion" of any portion of those rents to a party other than the secured lender is a diminution of the secured lender's interest in the assignment of rents portion of the security. *In re Stearns Building*, 165 F.3d 28 (6th Cir. 1998) (unpublished opinion); *In re Buttermilk Towne Center, LLC*, 2010 WL 5185870 (6th Cir. B.A.P. 2010); *In re River Oaks Limited Partnership*, 166 B.R. 94, 99 (E.D. Mich. 1994).

24. Adequate protection for the use of revenue generated by a hotel is determined in the same manner as for any other asset that is expected to produce revenues in the future. *In re LDN Corp.*, 191 B.R. 320, 327 (Bankr. E.D. Va. 1996) (hotel case: "adequate protection is established by the fact that the cash is going toward the maintenance and enhancement of the value of the property in which the creditor holds a security interest"), *In re 5877 Poplar, L.P.*, 268 B.R. 140, 149-150 (Bankr. W.D. Tenn. 2001) (hotel case: normal adequate protection analysis applied; no requirement that the debtor replace revenues to be expended on a dollar-for-dollar basis from unencumbered sources); *In re Resorts Inns, Inc.*, 2004 WL 2201252, at *4 (hotel case: debtor permitted to use cash collateral under existing cash

collateral order pending valuation hearing and determination of whether to limit the lender's postpetition lien under the "equities of the case" provision of § 552(b); no requirement that the debtor replace revenues to be expended on a dollar-for-dollar basis from unencumbered sources).

25. CWCapital's interest in cash collateral is entitled to adequate protection only to the extent of any diminution in value postpetition.

26. If such interest is not decreasing in value, or is otherwise adequately protected, then the Debtor can use its cash collateral for payment of all administrative expenses, including for operations, maintenance and professionals, and other amounts approved by this Court.

27. The Hotel is not decreasing in value, and new revenues are created daily to replace the revenues on hand on the Petition Date.

28. CW is adequately protected by the replacement liens and periodic cash payments proposed to be made and because there is no diminution in the value of its interest.[4]

C. **Any Postpetition Interest of CWCapital Should be Limited and the Debtor Should be Authorized to Use the Hotel Revenues Based on the Equities of the Case.**

29. Section 552(b)(2) provides an important exception to the postpetition effect of security interests. If a prepetition security agreement extends to prepetition property of the debtor and "to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels . . . then such security interest extends to such rents and such fees, charges, accounts, or other payments

---

[4] CWCapital's assertion that the Debtor's prepetition diversion and use of funds from the Clearing Account changes this analysis is without basis and is made without CWCapital's citing any authority. CWCapital's request for sequestration of the cash collateral should also be denied. This is a single-debtor case, and the budget sets forth the necessary costs and expenses to be paid if the Motion is granted by this Court.

acquired by the estate" post-petition to the extent provided in the security agreement "*except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.*" 11 U.S.C. § 552(b)(2) (emphasis added). The last clause in section 552(b) is known as the "equities of the case" exception.

30. Under section 552(b), a court must strike the proper balance between the rights of a secured creditor and the rehabilitative goals of the Bankruptcy Code. *United Virginia Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir. 1986); *In re Island Helicopter Corp.*, 63 B.R. 515, 522 (Bankr. E.D.N.Y. 1986). Bankruptcy courts have discretion in determining whether the "equities of the case" exception applies to a particular case. *Airport Inn Assocs. v. Travelers Ins. Co. (In re Airport Inn Assocs., Ltd.)*, 132 B.R. 951, 959 (Bankr. D. Colo. 1990). In assessing the equities, bankruptcy courts often look to section 552's legislative history for further guidance. *All Points Capital Corp. v. Laurel Hill Paper Company (In re Laurel Hill Paper Co.)*, 393 B.R. 89, 92-93 (Bankr. M.D.N.C. 2008).

31. The legislative history to the 1994 amendments to section 552(b) demonstrates the importance that Congress placed on the "equities of the case" exception, especially with regard to hotels. In particular, the House Floor Statement for Section 214 of the Bankruptcy Reform Act of 1994, which added subsection (b)(2), states that this subsection "clarifies the bankruptcy treatment of hotel revenues which have been used to secure loans to hotels and other lodging accommodations." 140 Cong. Rec. H10,768 (daily ed. Oct. 4, 1994). The Floor Statement goes on to state that the hotel revenue streams, "while critical to a hotel's continued operations, are also the most liquid and most valuable collateral the hotel can provide to its financiers. When the hotel experiences financial distress, the interests of the hotel

operations, including employment for clerks, maids, and other workers can collide with the interests of persons to whom the revenues are pledged." *Id.*

32. Most importantly, the legislative history to the 1994 amendments also makes clear that the rights of hotel lenders under section 552 are still circumscribed:

> A critical limit is the "equities of the case" provision . . . which is designed, among other things, to prevent windfalls for secured creditors and to give the courts broad discretion to balance the protection of secured creditors, on the one hand, against the strong public policies favoring continuation of jobs, preservation of going concern values and rehabilitation of distressed debtors, generally.

*Id.* As further evidence of this important "circumscription" on a hotel secured lender's rights is the list of exceptions at the beginning of subsections (b)(1) and (b)(2). For example, "the reference to section 363 permits use of pledged revenues if adequate protection is provided; the reference to section 506(c) permits broad categories of operating expenses . . . to be charged against the estate." *Id.* The legislative history thus strongly supports this Court's ability to limit CWCapital's interest.

33. Based upon the "equities of the case" under section 552(b) to the extent this Court finds that CWCapital has a valid postpetition security interest, the Debtor requests that this Court use its discretion to limit CWCapital's interest and allow the Debtor to use the Hotel revenues as set forth in the proposed budget to operate and maintain the Hotel and seek to effectuate a going concern sale or a chapter 11 plan of reorganization. CWCapital should not be given a windfall at the expense of the Debtor's attempt to preserve the going value of the Debtor's estate and to reorganize and rehabilitate, which are the very purposes of chapter 11.

## Conclusion

WHEREFORE, the Debtor, for the reasons set forth in the Motion and in this Reply, respectfully requests that the Court enter an order (i) granting the Motion, and (ii) granting the Debtor such other and further relief as is just and proper.

Dated: March 11, 2011

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Richard M. Pachulski
Richard M. Pachulski (CA Bar No. 90073)
Bruce Grohsgal (Bar No. 3583)
Peter J. Keane (Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Tel: (302) 652-4100
Fax: (302) 652-4400
Email: rpachulski@pszjlaw.com
bgrohsgal@pszjlaw.com
pkeane@pszjlaw.com

[Proposed] Counsel to the Debtor